John B. Koegel (JK-4762)
The Koegel Group LLP
161 Avenue of the Americas
New York, New York 10013
(212) 255-7744

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



----

PAUL RESIKA, MICHAEL STEINER, GIORGIO
CAVALLON FAMILY LIMITED PARTNERSHIP,
DOLORES T. HILDING, GEORGE MCNEIL
CHARITABLE TRUST, and HELEN MCNEIL,

                    Plaintiffs,

    - against -

BENUCCI S.r.l.,

                    Defendant.

----

07 CIV 9668

COMPLAINT

JURY TRIAL DEMANDED

Plaintiffs, Paul Resika, Michael Steiner, Giorgio Cavallon Family Limited Partnership, Dolores T. Hilding, George McNeil Charitable Trust, and Helen McNeil, by their attorney, The Koegel Group LLP, complaining of the Defendant, respectfully allege as follows:

## NATURE OF THE CASE

1. This action seeks the return of twenty eight (28) works of art that belong to the Plaintiffs. Most, if not all, are believed to be in the possession, custody or control of the Defendant in Rome, Italy. In the event that any works cannot be returned because they are no longer in the possession, custody, or control of the Defendant, the action seeks damages for conversion based on the full fair market value or other value of any such irretrievable works. The lawsuit will focus to a considerable extent upon a document dated June 2, 2007 and entitled

1

"Settlement Agreement", entered into by and between the Defendant and the about to be defunct Salander-O'Reilly Galleries in New York. Plaintiffs allege and intend to prove that the Defendant and/or the counsel it used in New York for the preparation of this document knew or had reason to know that the Salander-O'Reilly Galleries lacked the "good and clear title" that was a material and central component of that document. Plaintiffs allege and intend to prove that Defendant colluded with Salander-O'Reilly Galleries to knowingly injure these Plaintiffs by misappropriating their valuable property in a manner demonstrating a contumacious disregard for their ownership rights. Plaintiffs allege that the aggregate value of all twenty eight artworks is $3,185,000.

## PARTIES

2.  Plaintiff Paul Resika is an accomplished and respected visual artist solely engaged in the creation of works of art. He resides at 114 East 84th Street, New York, New York and he is a citizen of the State of New York.

3.  Plaintiff Michael Steiner is an accomplished and respected visual artist solely engaged in the creation of works of art. He resides at 290 Old Turnpike Road East, Bridgewater, Connecticut and he is a citizen of the State of Connecticut.

4.  Plaintiff Giorgio Cavallon Family Limited Partnership and Plaintiff Dolores T. Hilding are the owner of artworks created by the deceased artist Giorgio Cavallon, an accomplished and respected visual artist. Both of these Plaintiffs maintain an address at 22 Southwood Road, Storrs, Connecticut and are citizens of the State of Connecticut.

5. Plaintiff George McNeil Charitable Trust and Plaintiff Helen McNeil are owners of artworks created by the deceased artist, George McNeil, an accomplished and respected visual artist. The George McNeil Charitable Trust is located at 195 Waverly Avenue, Brooklyn, New York and is a citizen of the State of New York. Helen McNeil is located in Truro, Massachusetts and is a citizen of the State of Massachusetts.

6. Upon information and belief, Benucci, S.r.l. is an entity established pursuant to the laws of Italy and maintains a principal place of business at Via del Babuino 151-153, Rome, Italy. Under the name Gallerie d'Arte Benucci, it is engaged in the business of acting as an art dealer, offering and selling works of fine art. The owners of the Defendant, Tommaso Gargari/Benucci and Ida Benucci, are experienced and knowledgeable concerning the manner and means by which works of art are sold and are aware of the need and the procedures used for confirming title to works of art. Defendant is a subject of the foreign nation of Italy.

## JURISDICTION AND VENUE

7. Jurisdiction of this action and the claims asserted herein are conferred upon this Court by 28 U.S.C §1332 in that the Plaintiffs are citizens of the states of New York, Connecticut and Massachusetts and the Defendant is a subject of a foreign state. The amount in controversy exceeds $75,000, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332.

8. In personam jurisdiction over Defendant is claimed pursuant to New York's Civil Practice Law and Rules §301 and/or §302.

9. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(d).

## FACTS COMMON AND APPLICABLE TO EACH AND ALL CLAIMS
## FOR RELIEF HEREIN

10. Plaintiff, Paul Resika, is and has been the creator and owner of the following eighteen works of art: *Vessels # 23*, 1999, oil on canvas, 30 x 40; *Black, Green, Blue, White*, 1999-2000, oil on canvas, 51 1/2 x 77 1/4; *Flat Boats*, 1999-2000, oil on canvas, 64 x 51; *Sun Sails*, 1999-2000, oil on canvas, 32 x 40; *Blue Creation*, 2001-2002, oil on canvas, 96 x 77; *Black Vessel and Moon*, 2000-2003, oil on canvas, 52 x 60; *Light of Water*, 2004, oil on canvas, 64 x 51; *Green Night*, 2000, oil on canvas, 24 x 30; *Black and Grey Harlequin*, 2000, oil on canvas, 24 x 30; *For Remo*, 2000-2002, oil on canvas, 28 x 36; *Branch, Moon, Sail*, 2003-2004, oil on canvas, 40 x 30; *Moon Triangles*, 2002-2004, oil on canvas, 76 x 76; *Pine Branch, Moon, Sail*, 2003-2004, oil on canvas, 60 x 52; *Black Branch, Sail*, 2003-2004, oil on canvas, 40 x 30; *Branch, Moon*, 2003-2004, oil on canvas, 48 x 40; *Blue Creation II*, 2002-2004, oil on canvas, 74 x 60; *Yellow Creation*, 2001-2002, oil on canvas, 72 x 60; and *Blue Carp*, 2002, oil on canvas, 63 x 50.

11. The total, current fair market value of the foregoing eighteen works of art is $935,000.

12. Plaintiff, Michael Steiner, is and has been the creator and owner of the following four works of art: *The Fan*, 1985, bronze, 91 x 112 x 71 cm (Master Cast); *Fire and Iron*, 1982, bronze, 117 x 86 x 51 cm (Master Cast); *Bones and Dust*, 2003, bronze, 34 x 16 x 10 inches; and *August 9, 2003*, 2003, gouache on paper, 60 x 40 inches.

13. Two of the foregoing four artworks are original, master castings. They are especially valuable since they are the sole means for producing the sculptural works that are

available for sale. Accordingly, these master castings are not for sale and their value is the value of the authorized, sculptural works that can be produced. The total value of these two master castings is $1,440,000. The other two Steiner artworks have an total, current fair market value of $70,000.

14. The Giorgio Cavallon Family Limited Partnership is and at all relevant times has been the owner of the following work of art created by Giorgio Cavallon: *Between the Blues*, 1962, oil on canvas, 84 x 72 inches. Delores T. Hilding is and at all relevant times has been the owner of the following two works of art created by Giorgio Cavallon: *Untitled*, 1947, oil on canvas, 30 1/8 x 30 1/8 inches; and *Untitled*, 1963, oil on canvas, 60 x 52 inches.

15. The total, current fair market value of the foregoing three works by Giorgio Cavallon is $540,000.

16. The George McNeil Charitable Trust is and at all relevant times has been the owner of the following two works of art: *Black Line Cloud*, 1983, acrylic on canvas, 44 x 50 inches and *Astor Place*, 1988, oil on canvas, 64 x 78 inches. Helen McNeil is and at all relevant times has been the owner of the work created by George McNeil entitled *Bosra*, 1960, oil on panel, 26 x 19-3/4 inches.

17. The total current fair market value of the foregoing three works by George McNeil is $200,000.

18. The twenty eight (28) works of art described above are hereafter collectively referred to as the "Subject Works". The aggregate value of the Subject Works is $3,185,000.

19. At different points in time not relevant to the claims in this action, each of the Plaintiffs established a business and trust relationship with Lawrence Salander and his art gallery

5

called Salander-O'Reilly Galleries (hereinafter collectively referred to as "Salander"). The Salander art gallery is currently located at 22 East 71st Street, New York, New York and had become known for exhibiting and selling important artworks covering a wide time frame. For example, Salander had become known for exhibiting and selling artworks as far back as the Renaissance and was well known for selling artworks by important living artists or recently deceased artists. Plaintiffs Paul Resika and Michael Steiner are both alive and had directly entrusted their artworks to Salander and Defendant for exhibition and sale (although in the case of Plaintiff Michael Steiner, certain works were entrusted for exhibition purposes only). Giorgio Cavallon died in 1989 and the Subject Works of his creation were entrusted to Salander by the current owners, Plaintiff Giorgio Cavallon Family Limited Partnership and Dolores T. Hilding. George McNeil died in 1995 and the Subject Works of his creation were entrusted to Salander by the current owners, Plaintiff George McNeil Charitable Trust and Helen McNeil.

20.  In every instance except for the Steiner artworks that were entrusted for exhibition purposes only, the artworks entrusted by the Plaintiffs were on consignment. Accordingly, no title was vested in Salander and no right was given to Salander to convey title in the absence of a bone fide sale for an authorized purchase price. Moreover, Salander had no right or authority to convey title without remitting payment in full to the particular owner for the amount due to that owner under the applicable agreement. As described herein, certain Subject Works entrusted by Plaintiff Resika and Plaintiff Steiner were provided for the purpose of consignment to Defendant and Defendant was fully aware of that fact. The owners of works by Giorgio Cavallon and George McNeil were not informed and did not authorize the consignment of their artworks to Defendant.

21. It is well known, even by those who are not deeply engaged in the business of buying and selling art, that the "inventory" of art galleries largely consists of artworks held on a consignment basis. The recognition of this form of possession is even more widespread and more firmly understood to exist with contemporary works of art where ownership of artworks by the art gallery is the rare exception. Moreover, when an art gallery represents an artist or an artist's estate, that gallery has a fiduciary duty to give priority to consigned work from the artist over works that the art gallery may have purchased from other sources. Indeed it is the general rule, certainly known by those who are engaged in the business, that the contemporary art gallery offers and sells works that are owned by consignors rather than those few that may have been purchased and put aside as some sort of investment.

22. At various points in time, the Subject Works were sent to the Defendant by or through Salander and Defendant received them as consigned artworks.

23. Upon information and belief, Defendant knew or should have known, that each and all of the Subject Works consigned to it by Salander were held or processed by Salander on consignment from others. Since Defendant was familiar with the normal method and means for doing business as an art gallery, it would have believed or assumed that each and all of the Subject Works that it received were sent by or through Salander as an agent for the owners and were not owned by Lawrence Salander or Salander-O'Reilly Galleries.

24. With regard to Plaintiffs Paul Resika and Michael Steiner, Defendant's awareness of the ownership of the Subject Works was far more direct. Regarding Plaintiff Resika, each of the eighteen (18) Subject Works belonging to Plaintiff Resika were received by Defendant in September/October 2005 for a one person exhibition. Some were provided directly by Plaintiff

Resika and others were already on consignment to Salander. Plaintiff Resika came to Rome and it was totally clear to the Defendant that Plaintiff Resika was the owner of all of these artworks. Moreover, these direct dealings with Plaintiff Resika further demonstrate how simple and easy it would have been for Defendant to inquire whether Plaintiff Resika had transferred title to any of his paintings to Salander prior to June 2, 2007. Regarding Plaintiff Steiner, Ida Benucci and Tommaso Gargari/Benucci both went to Steiner's studio in Connecticut on two days in January 2005 and asked him to entrust (through Salander) a large number of works for exhibition in Rome. Two of the works that Defendant especially sought existed only in the form of a master cast which were not for sale. Defendant understood that if master castings were entrusted, they would be used only for exhibition purposes (a prospective purchaser would have to order the production of a new casting from that master). Following discussions on limiting the number of works initially entrusted, Defendant asked for and received the two master castings and two additional works and it was entirely clear to Defendant that all of these four Subject Works were owned by Plaintiff Steiner. These direct dealings with Plaintiff Steiner further demonstrate how simple and easy it would have been for the Defendant to inquire whether Plaintiff Steiner had transferred title to any of the Subject Works owned by him to Salander prior to June 2, 2007.

25. Prior to June 2007, Defendant had received an unknown number of artworks from or through Salander. Among those artworks were the twenty eight (28) Subject Works owned by the Plaintiffs.

26. Upon information and belief, at all times prior to June 2007 Defendant had no reason or basis to know or believe that Salander had any ownership interest in any of the Subject Works.

27. Upon information and belief, prior to June 2007, Defendant made no effort of any kind to ascertain anything about the ownership of the Subject Works.

28. At some point prior to June 2, 2007, Defendant took steps to achieve satisfaction of a debt that it contended was owed to it by Salander. In the course of those steps, Defendant engaged the firm of Proskauer Rose LLP in New York City to assist it in those efforts.

29. Upon information and belief, at some point prior to June 2, 2007, attorneys at Proskauer Rose LLP prepared a document for Salander and the Defendant to sign which purported to convey title to all of the Subject Works to Defendant. A copy of this document that appears to be incomplete is annexed hereto as Exhibit A. Defendant paid no money for this transfer and no values for any of the Subject Works appear in the Exhibit copy of the transfer document.

30. Upon information and belief, in connection with the preparation of this document, counsel for Defendant took no steps to ascertain whether the representation and warranty that Salander possessed good and clear title to the Subject Works was a truthful representation, notwithstanding the fact that a representation of that nature would be contrary to the normal business practices of art galleries. Counsel knew or should have known that this representation was false and any number of simple steps taken by counsel would have revealed this representation to be false.

31. Upon information and belief, Defendant took no steps to ascertain whether the representation and warranty that Salander possessed good and clear title to the Subject Works was a truthful representation, notwithstanding the fact that a representation of that nature would be contrary to the normal business practices of art galleries. Defendant knew or should have

known that this representation was false and any number of simple steps taken by the Defendant would have revealed this representation to be false.

32. In addition to the absence of any effort to ascertain whether Salander had good title to the Subject Works, as of June 2007 Salander had already acted in a dishonest manner toward Defendant by *inter alia* providing postdated checks which were dishonored by Salander's bank. Given the pressure that Defendant was applying to Salander and given at least Defendant's general awareness of Salander's financial condition, Defendant could plainly see that Salander was willing to say or sign anything just to make the most immediate problem disappear.

33. Accordingly, upon information and belief, Defendant and Salander, with the assistance of counsel, colluded to create a bogus document that Defendants could attempt to use to deprive Plaintiffs of their property.

34. Upon information and belief, many of the Subject Works had been in the possession of Defendant for a lengthy period of time and during that period Defendant gave little or no attention to selling such works. However, immediately after obtaining this document, Defendant began furious efforts to sell off as many of the Subject Works as possible at drastically reduced prices bearing no relationship to the fair market value of the Subject Works. Defendant knew that it was seeking to sell the Subject Works at prices far below fair market value.

35. Upon information and belief, at various times after Defendant and Salander concocted and executed the so-called "Settlement Agreement", Defendant received communications from one of the Plaintiffs and possibly from others which placed Defendant clearly on notice that Salander's representation and warranty of title was false. Defendant

avoided responding to those communications and otherwise disregarded that notice while it continued its efforts to sell off the Subject Works at drastically reduced prices. Defendant thereby clearly has continued its willful, injurious effort to misappropriate the Subject Works.

36. Both Defendant and Salander are "art merchants" within the meaning of New York Arts and Cultural Affairs Law §11.01 and §12.01 (hereinafter "NYACAL").

37. Since the Plaintiffs are artists and the heirs of artists and since Salander and Defendant are each art merchants and since the artworks were entrusted by Plaintiffs to Defendant through Salander by way of New York State, the status of the entrusted works, the proceeds of any sale of the entrusted works, as well as the relationship between the Plaintiffs and the Defendant are all governed by and determined under the NYACAL.

38. Pursuant to NYACAL §12.01(1)(a)(ii), all of the Subject Works entrusted to Defendant are trust property in the hands of Defendant for the benefit of the Plaintiffs.

39. Pursuant to NYACAL §12.01(1)(a)(iii), any proceeds of the sales of the Subject Works entrusted by Plaintiffs to Defendant are trust funds in the hands of Defendant for the benefit of Plaintiffs.

40. Pursuant to NYACAL §§12.0(1)(a)(i), (ii) and (iii), with respect to every Subject Work entrusted to Defendant and Salander, Defendant became an agent to the Plaintiffs, with responsibility for the conservation of such trust property for the benefit of Plaintiffs. As agent for the conservation of such artwork, Defendant became a fiduciary on behalf of the Plaintiffs subject to all requirements such a relationship entails, including, but not limited to, an obligation to act honestly and properly with regard to the Subject Works owned by the Plaintiffs.

## AS AND FOR A FIRST CLAIM FOR RELIEF
(Replevin)

41.    At all relevant times, Plaintiffs are and have been the owners of the Subject Works, having a total value of at least $3,185,000, that may be in the possession, custody or control of the Defendant. Plaintiffs are entitled to immediate possession of their valuable, unique property.

42.    Defendant, having full knowledge of Plaintiffs' rights to ownership and possession of the Subject Works, has wrongfully and unlawfully deprived and continued to deprive Plaintiffs of the lawful possession, use, and benefit of their property.

43.    Defendant has refused and still refuses to return the Subject Works and proper demands for the return of this property have been made.

44.    Plaintiffs seek an order directing the return of each and all of the Subject Works in the same undamaged condition that each was entrusted to the Defendant.

45.    Since each and all of the Subject Works are unique and irreplaceable, Plaintiffs have no remedy at law which would fully compensate for the loss of their property and thus no remedy at law would be an equivalent alternative to a judgment awarding possession.

## AS AND FOR A SECOND CLAIM FOR RELIEF
(Conversion)

46.    Plaintiffs have absolute ownership rights to each and all of the Subject Works.

47.    Defendant has exercised unauthorized dominion and control over the Subject Works to the exclusion of Plaintiffs' rights therein.

48. Defendant's refusal to return the Subject Works to Plaintiffs despite repeated demands and despite knowledge that Defendant has no further right to possess and/or sell any of these artworks has been willful, flagrant and with a high degree of moral culpability.

49. Any disposition of a Subject Work pursuant to the bogus, collusive "Settlement Agreement" would have been a willful misappropriation of property belonging to a Plaintiff.

50. For any and all of the Subject Works which are not returned to the Plaintiffs, Plaintiffs are damaged by Defendant's conversion of their property having a current value of at least $3,185,000 and may have been damaged additionally by an amount to be determined upon a trial of this action.

51. In light of Defendant's willfulness, flagrancy and the high degree of moral culpability in connection with any conversion of Plaintiff's property by the Defendant, Plaintiffs demand an additional award of punitive damages in an amount to be determined at trial but in no event less than $1,000,000.

## AS AND FOR A THIRD CLAIM FOR RELIEF
(Conveyance made with intent to defraud / §276 of the New York Debtor and Creditor Law)

52. When Defendant received each and every Subject Work, Defendant had actual knowledge that each and every Subject Work was owned by one of the Plaintiffs. Defendant had no basis to believe that Salander had any ownership interest in any of the Subject Works. Up to and including June 2, 2007 when Lawrence Salander signed the "Settlement Agreement", Salander knew that he had no ownership interest of any kind in the Subject Works. Salander's attempt to convey title to Defendant was an act taken with actual intent to hinder, delay or

defraud each and all of the Plaintiffs and was fraudulent as proscribed by §276 of the New York Debtor and Creditor Law.

53. Defendant was the transferee of Salander's attempted fraudulent conveyance of the Subject Works.

54. Having previously known that Salander had no ownership interest of any kind in the Subject Works and being aware of Salander's prior dishonest acts and Salander's apparently impaired financial condition, Defendants would have been aware that Salander was attempting a fraudulent transfer in which no real consideration was paid to Salander for the benefit of the rightful owners.

55. The "Settlement Agreement" entered into between Salander and Defendant was a secret and hasty transfer and not a transaction in the usual course of business.

56. The attempted conveyance included a kick-back or future benefit for Salander in that the "Settlement Agreement" contained a provision (¶6) that would have required Defendant to pay Salander any sales proceeds received by Defendant after a certain recoupment of a specified sum.

57. The absence of any payment and the absence of any valuation for any of the property purportedly conveyed are additional aspects of the transaction which indicate an attempt to siphon off any possible "assets" regardless of the value of those assets and regardless of whether those assets were owned by others and therefore were not assets that could be properly transferred by Salander.

58. Accordingly, Defendant was aware that it was engaging in a fraudulent conveyance that would hinder, delay or defraud the Plaintiffs who were the rightful owners of

the Subject Works, in violation of § 276 of the New York Debtor and Creditor Law.

59. The bogus, fraudulent attempted conveyance from Salander to Defendant should be set aside and Defendant should be ordered to deliver each and all the Subject Works to the Plaintiffs and otherwise held accountable for the full value of every Subject Work which cannot be returned.

60. Since Defendant acted in a manner that was wanton and which involved a high degree of moral culpability in breach of its fiduciary obligations to the Plaintiffs, an award of punitive damages should be awarded in an amount determined at trial but in no event less than $1,000,000.

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendant, as follows:

A. That Defendant be ordered to turn over possession and otherwise return all of the Subject Works to Plaintiffs, including any of the Subject Works that Defendant may have purportedly sold or conveyed to others.

B. That Defendant be ordered to pay Plaintiffs such damages as Plaintiffs has sustained or incurred as a consequence of Defendant's tortious conversion of their property plus interest from the date that each artwork was converted.

C. That, because of the willful, wanton, deliberate and egregious nature of the Defendant's tortious conduct not only toward the Plaintiffs, but towards others in the same transaction and Defendant's violation of §276 of the New York Debtor and Creditor Law, Plaintiffs receive an award of punitive or exemplary damages in the minimum amount of $1,000,000.

D.  That Plaintiffs receive an award of attorney's fees pursuant to §276-a of the New York Debtor and Creditor Law.

E.  That Plaintiffs be granted the costs and disbursements of this action as permitted by law and such other and further relief as is warranted and justified by the pleadings and the evidence.

## JURY TRIAL DEMANDED

62.  Plaintiffs hereby demands a trial by jury.

Dated: New York, New York
October 30, 2007

By: _/s/ John B. Koegel_
John B. Koegel (JK 4762)

THE KOEGEL GROUP LLP
*Attorneys for Plaintiffs*
161 Avenue of the Americas
New York, New York 10013
Tel: (212) 255-7744
Fax: (212) 337-1103