UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL RESIKA, MICHAEL STEINER, GIORGIO
CAVALLON FAMILY LIMITED PARTNERSHIP,
DOLORES T. HILDING, GEORGE MCNEIL
CHARITABLE TRUST, and HELEN MCNEIL,

                        Plaintiffs,

            - against -

BENUCCI S.r.l.,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

07 Civ. 9668 (SHS)

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION
## REGARDING F.R.C.P. RULE 9(b)

THE KOEGEL GROUP LLP
*Attorneys for Plaintiffs*
161 Avenue of the Americas
New York, New York 10013
(212) 255-7744

**Preliminary Statement**

In May 2007, Tommasso Gargari and Ida Benucci, the principals of Gallerie d'Arte Benucci in Rome, Italy, had in their possession a substantial number of artworks that had been consigned by or through the Salander-O'Reilly Galleries ("Salander"), an art gallery on the verge of bankruptcy. Mr. Gargari and Ms. Benucci had no evidence and no basis to believe that any of these artworks were the property of Salander. Quite to the contrary, they had evidence and reason to believe the artworks belonged to consignors to Salander. At or about that same time, Salander defaulted on a debt to Benucci in an amount totaling $4,901,100 and several checks given by Salander against that debt had been dishonored. Mr. Gargari and/or Ms. Benucci thereupon hired a major New York law firm and on June 2, 2007, came to New York, and signed a so-called "Settlement Agreement" with Salander by which Salander purported to convey title to 97 works of art without any reference to valuation (two months before the Maine Antiques Digest reported the existence of four lawsuits and other claims against Salander, which was the publicity that led to the Bankruptcy proceedings referenced in Benucci's moving papers). No funds were paid for this purported conveyance. Plaintiffs were and are the owners of 28 of those artworks. In addition to claims for replevin and conversion, Plaintiffs have alleged that this transaction violated §276 of the New York Debtor and Creditor Law ("NYDCL").

Misstating the Complaint and citing inapplicable case law, Defendant, Benucci S.r.l. ("Benucci") asks the Court to dismiss the NYDCL claim on the ground that Plaintiffs allegations supporting this claim are insufficiently particularized. Plaintiffs submit that they have fully complied with, and indeed greatly exceeded, the pleading requirements of F.R.C.P. Rule 9(b) as that rule relates to claims under NYDCL §276.

## Defendant's Motion Fails To Present Even A Prima Facie Basis for Relief

To begin with, Benucci's motion is without merit because it distorts and misstates the Complaint and cites only inapplicable case law for its argument that Plaintiffs have not satisfied the requirements of F.R.C.P. Rule 9(b).

The Complaint contains 60 paragraphs and asserts only three claims. None of the claims are asserted upon information and belief. While a limited number of factual allegations common to all of the three claims are upon information and belief, it is clear that in each instance the allegation involves information that the Plaintiffs at this point in the case would not have the ability to know.[1] The balance of factual allegations are asserted on knowledge and these allegations are specific and directly connected to the proof necessary to sustain a claim for relief under NYDCL§276. Yet Benucci's motion repeatedly describes the Complaint as containing little more than "numerous conclusory allegations".

Benucci's motion also lacks any authority for its argument. Six cases are cited and none are relevant to the application before the Court. Three of the six cases involve Federal Securities Law complaints charging violations of Rule 10-b-5.[2] Since the elements and the evaluation of a Securities Law claim are different, the points made by the courts are inapplicable to the assessment of a claim under NYDCL§276. For example, Benucci's memorandum cites *Acito v. Imcera Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) and argues that Plaintiff's Complaint must specify statements that are alleged to be fraudulent and when and where the statements were

---

[1] Benucci's Memorandum of Law trumpets five of the paragraphs in Plaintiffs' Complaint that are alleged on information and belief (Memorandum p. 10). Each of these allegations involves acts or communications in which Plaintiffs were not participants and therefore would have no way of knowing exactly what transpired. Nevertheless, the allegation is specific and provides notice concerning the action or the communication which Plaintiffs believe supports their claim.

[2] *Acito v. Imcera Group, Inc.*, 47 F.3d 47 (2d Cir. 1995); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994).

made and why they are fraudulent. (Memorandum p. 4). In a securities case or a common law fraud case, this argument would have some meaning. Here it is totally meaningless because the violation of NYDCL§276 does not require statements (and rarely involves statements). A fourth case involves a common law fraud case and there is nothing in the decision that provides any guidance on either the law or an analogous set of facts.[3] That leaves two cases that at least involve the NYDCL. One of these is from 1937 and it is not a decision directed at pleading requirements (rather it is an inapposite case where a complaint was dismissed for failure to state a claim).[4] Lastly there is one case that mentions F.R.C.P. Rule 9(b) in a case involving NYDCL§276.[5] The District Court ordered the plaintiff to replead because the entire complaint was averred upon information in belief (noting that the plaintiff had already conducted substantial discovery on the issues and therefore had information that could be presented on knowledge)(631 F.Supp. at 348). The Circuit Court decision merely affirms the District Court without any relevant guidance for the argument before this Court (818 F.2d. at 251)

## Compliance with F.R.C.P. Rule 9(b) Must Be Evaluated in the Context of NYDCL§276

It is without question that F.R.C.P. Rule 9(b) applies to a claim under NYDCL§276. Compliance with Rule 9(b) is, however, determined by reference to the elements of an NYDCL claim. Plaintiffs are not claiming common law fraud. Plaintiffs are not claiming that they were misled by any misrepresentation committed by Benucci. Plaintiffs' claim that Benucci collaborated and conspired with Salander to create the appearance of a conveyance of artworks

---

[3] *Campaniello Imports, Ltd. v. Saporiti Italia,* 117 F.3d 655 (2d Cir. 1997)
[4] *Irving Trust Co. v. Kaminsky,* 19 F.Supp.816 (S.D.N.Y. 1937)
[5] *Atlanta Shipping Corp. Inc., v. Chemical Bank,* 631 F.Supp. 335 (S.D.N.Y 1986) and the Court of Appeals opinion at 818 F.2d 240 (2d Cir. 1987)

that belong to the Plaintiffs. F.R.C.P. Rule 12(b)(6) motions based on compliance with Rule 9(b) are evaluated in the context of whether there is a sufficient set of alleged facts to give the defendant fair notice of the conveyance or conveyances that are claimed to be fraudulent and facts which if proven will support an inference of intent to hinder, delay or defraud either present or future creditors.

Benucci's motion is frivolously silent on the proof required to sustain a claim under NYDCL §276. And, as noted, no case law is offered on the pleading requirements for a claim under this statute. F.R.C.P. Rule 9(b) becomes applicable to a claim under NYDCL §276 because the claimant/creditor must prove that the transferee acted with intent to hinder delay or defraud the claimant/creditor. Any one of these purposes will satisfy the terms of the statute. As observed in *Marketxt Holdings Corp. v. Empyrean Investment Fund, L.P.,* 376 B.R. 390, 403 (S.D.N.Y. 2007): "Moreover, it is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven [citation].... it is established under New York law that in an intentional fraudulent conveyance case the relevant inquiry is whether the transferee had either 'an actual or constructive knowledge of the fraudulent scheme. [citation]'" Similarly in *Hassett v. Goetzmann,* 10 F.Supp.2d 181, 188 (N.D.N.Y 1998) the Court noted: "Pursuant to this section 'only an actual intent to hinder or delay need be established not an actual intent to defraud'. *United States v. Karlin,* 948 F.Supp 271,277 (S.D.N.Y 1996); *Elgin Sweeper Co v. Nelson Inc.,* 84 F.Supp 641,649 (N.D.N.Y 1995)." Accordingly, proof of fraudulent intent is not an absolute prerequisite to a claim under NYDCL §276. Here the "Settlement Agreement" plus Plaintiffs allegations regarding Benucci's knowledge that these artworks were not owned by Salander and that the "Settlement Agreement" was concocted purely to provide an argument for claiming title (along with the absence of any payment to

4

Salander), would satisfy the pleading requirement that Benucci acted with actual intent to hinder or delay the Plaintiffs in the pursuit that they would naturally undertake to reclaim their artworks.

That said, most of the cases on NYDCL §276 do speak in terms of fraudulent intent since "defraud" is one of the purposes cited by the statute (and the act which created the law was called the "Fraudulent Conveyances Act"). Yet here the issue is not fraud generally, but rather fraudulent intent within the context of whether the challenged transaction should be set aside under the NYDCL.

In *HBE Leasing Corporation v. Frank,* 48 F.3d 623, 636 (2d Cir. 1995) the Court of Appeals has instructed as follows:

> the transferee need not have actual knowledge of the scheme that renders the conveyance fraudulent. Constructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry. *See, e.g., Tabor Court,* 803 F.2d at 1295 (lenders 'knew, or should have known' that monies would not be retained by debtor). There is some ambiguity as to the precise test for constructive knowledge in this context. While some cases have stated that purchasers who do not make appropriate inquiries are charged with 'the knowledge that ordinary diligence would have elicited,' *United States v. Orozco-Prada,* 636 F.Supp. 1537, 1543 (S.D.N.Y.1986), *aff'd,* 847 F.2d 836 (2d Cir.1988); *see also Morse v. Howard Park Corp.,* 50 Misc.2d 834, 272 N.Y.S.2d 16, 22 (Sup.Ct.1966), others appear to have required a more active avoidance of the truth, *see Schmitt v. Morgan,* 98 A.D.2d 934, 471 N.Y.S.2d 365, 367 (1983) (test is whether subsequent purchaser who did not make serious inquiry 'was shielding himself from knowledge that a fraudulent conveyance had occurred'); 1 Glenn, *supra,* § 304, at 532 (transferee may be charged with knowledge only when there is 'conscious turning way from the subject.'

In another case *Salomon v. Kaiser,* 722 F.2d 1574, 1582 (2d Cir. 1983) the Circuit Court similarly stated:

> Fraudulent intent is rarely susceptible to direct proof. *In re Saphire*, 139 F.2d 34, 35 (2d Cir.1943). Therefore, courts have developed 'badges of fraud' to establish the requisite actual intent to defraud. *In re Freudmann*, 362 F.Supp. 429, 433 (S.D.N.Y.1973), *aff'd* 495 F.2d 816 (2d Cir.1974) (per curiam). Among the circumstances from which courts have inferred intent to defraud are: [C]oncealment of facts and false pretenses by the transferor, reservation by him of rights in the transferred property, his absconding with or secreting the proceeds of the transfer immediately after their receipt, the existence of an unconscionable discrepancy between the value of property transferred and the consideration received therefore...[and] the creation by an oppressed debtor of a closely-held corporation to receive the transfer of his property.

In *Sharp International Corp. v. State Street Bank and Trust Company*, 403 F.3d 43, 56 (2d Cir. 2005) the Circuit Court also spoke to this issue as follows:

> Due to the difficulty of proving actual intent to hide, delay or defraud creditors, a pleader is allowed to rely on "badges of fraud" "i.e. circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent".... These 'badges of fraud' may include (*inter alia*): 'a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration;...and retention of control of the property by the transferor after the conveyance." *Id.*; *see also HBE Leasing I*, 48 F.3d at 639 ("Actual fraudulent intent...may be inferred from the circumstances surrounding the transaction, including the relationship among the parties and the secrecy, haste, or unusualness of the transaction."); *In re Kaiser*, 722 F.2d 1574, 1582-83 (2d Cir.1983).[6]

This approach has been repeatedly followed by District Courts. For example, in *Sullivan v. Kodsi*, 373 F.Supp.2d 302, 306 – 307 (S.D.N.Y. 2005) the Court said:

> The Second Circuit has held that '[d]espite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge.' *Wesner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) (*citing Luce*, 802

---

[6] This decision affirmed a lower court ruling that a complaint did not satisfy F.R.C.P. Rule 9(b) because the fraud alleged did not apply to the challenged conveyance (unlike the Complaint here).

F.2d at 54 n. 1). Where facts are peculiarly within the opposing party's knowledge, as might be the case where private, financial transfers are involved, a complaint may base allegations on information and belief, provided that it 'adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.' *Id.* Courts may rely on certain 'badges of fraud; in finding the requisite 'strong inference of fraud,' including: (1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern of series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry. (Citations omitted).

Or in *Cambridge Capital LLC v. Rossi*, 331 B.R. 47, 59 (E.D.N.Y. 2005), the Court observed:

Courts will consider 'badges of fraud' which are circumstances that accompany fraudulent transfers so commonly that their presence gives rise to an inference of intent.... Such factors include (1) a close relationship among the parties to the transaction; (2) a secret and hasty transfer not in the usual course of business; (3) inadequacy of consideration; (4) the transferor's knowledge of the creditor's claim and the transferor's inability to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control of property by the transferor after the conveyance.... Depending on the context, badges of fraud will vary in significance, though the presence of multiple indicia will increase the strength of the inference.

Or in *Aaron v. Mattikow*, 225 F.R.D. 407, 413 (E.D.N.Y. 2004), the Court stated:

The petitioner is not required to establish actual intent 'to hinder, delay, or defraud...present or future creditors' by direct evidence, which is rarely available, *Hassett*, 10 F.Supp.2d at 188. Instead, the Court may infer fraud from the circumstances surrounding the transaction, commonly referred to as the 'badges of fraud.' *Id.* at 188 (citing *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1041 (2d Cir. 1984)). Such circumstances include for example: (i) transfers to relatives or close friends of the transferor; (ii) suspicious timing of the transfers or transfers that are unusual or hasty; (iii) lack of fair consideration for the

> transfers; (iv) whether the transfers rendered the transferor insolvent; and (v) the transferor's retention of possession, benefit, of use of the property transferred. *Id.* (citing *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir.1994); *Marine Midland Bank v. Murkoff*, 120 A.D.2d 122, 129, 508 N.Y.S.2d 17 (2d Dep't 1986)).

Or in *United Features Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 221

(S.D.N.Y. 2002), where the Court stated:

> the complaint must specify the 'particulars' of the alleged fraud-including, for example, the time, place, particular individuals involved, and specific conduct at issue. *Id.* at 54. And while Fed.R.Civ.P. 9(b) provides that 'malice, intent, knowledge, or other condition of mind…may be averred generally,' this proviso for allegations concerning state of mind does not give 'license to base claims of fraud on speculation and conclusory allegations.' *Shields v. Citytrust Bancorp*, 25 F.3d 1124, 1128 (2d Cir.1994) (internal quotation marks and citations omitted). The plaintiff still must allege facts giving rise to a 'strong inference of fraudulent intent,' which may be satisfied 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.' *Id.*

See also *RTC Mortgage Trust v. Sopher*, 171 F.Supp.2d 192, 201 (S.D.N.Y. 2001); *Capital Distribution Services, Limited v. Ducor Express Airlines, Inc.*, 440 F.Supp.2d 195, 204 (E.D.N.Y. 2006); *Securities Investor Protection Corp v. Stratton Oakmont*, 234 B.R. 293, 315 (S.D.N.Y. 1999); and *MFS/Sun Life Trust v. Van Dusen Airport Services Co.*, 910 F.Supp. 913, 935 (S.D.N.Y. 1995).

In one relatively recent case involving a complaint to set aside the conveyance of works of art, *Spainerman Gallery, PSP v. Love*, 320 F.Supp.2d 108 (S.D.N.Y. 2004), the Court found the pleading to be "plainly sufficient" because the complaint set forth details surrounding the re-sales of art "including the identity of the buyers, the dates of the transactions, and the alleged consideration received." Moreover, the Court cited compliance with F.R.C.P. Official Form 13

which provides a model complaint for fraudulent conveyance. Thus by simply specifying the dates and the nature of the transactions "plaintiffs complaint gives defendants notice of the precise conduct of issue." (320 F.Supp.2d at 114). Applying the assessment of the court in *Spainerman Gallery,* plaintiff's Complaint here is far more particularized than the complaint discussed in *Spainerman Gallery.* There is no question that Plaintiffs have specified dates and nature of the transactions that are challenged as well as the identity of the parties and the consideration given.

## The Challenged Conveyance Is Annexed To The Complaint

Plaintiffs are challenging a single transaction and it could not be presented with greater particularity. The conveyance is wholly contained in a single document signed by Benucci and Salander on June 2, 2007. The document is annexed to the Complaint.[7] The document recites why the transaction took place and it indicates exactly where it took place. It indicates how it was executed and by whom. There is nothing vague or conclusory about it. By simply including this document in the Complaint, Plaintiffs are in accord with the assessment of the court in *Securities Investor Protection Corp v. Stratton Oakmont*, 234 B.R. 293 (S.D.N.Y. 1999) where pleading these facts alone was held to be sufficient under F.R.C.P. Rule 9(b) (see 234 B.R. at 318).

---

[7] When the Complaint was prepared and filed, counsel for Plaintiffs possessed only a copy of the "Settlement Agreement" that was partially redacted. Since a complete copy of that document has now surfaced, it is attached to this Memorandum. The allegations in the Complaint, however, are not materially affected by the complete copy now available.

## Plaintiffs Allege Many Of The "Badges Of Fraud"

Plaintiffs allege a number of facts which taken together would strongly suggest that this was not a bona fide, good-faith conveyance. Many of these factual allegations apply directly to many of the "badges of fraud" which the courts have cited as circumstantial evidence of fraudulent intent.

In paragraph 55 of the Complaint, Plaintiffs allege that this transaction was not one that occurs in the usual course of business between parties such as Salander and Benucci. Indeed, the "Settlement Agreement" itself indicates that this was not an arms length transaction but rather a conveyance done under coercion based on the fact that Benucci had obtained an ex-parte order of attachment from a court in Rome against 85 artworks. The "Settlement Agreement" itself further indicates that one of the artworks attached was a painting by Henri Matisse entitled *Still Life with Tahitian Hat* (see ¶5 of the "Settlement Agreement"). As indicated in the "Settlement Agreement", in order to get possession of this work of art which Salander purportedly already owned, Salander signed over title to 97 works of art (28 of which belonged to the Plaintiffs). While Plaintiffs may have to present expert testimony regarding what is common among art dealers, Plaintiffs do allege that this kind of conveyance is not an ordinary transaction between art dealers. And given the relationship between the parties and the bargaining pressure that Benucci obviously had by virtue of its possession of the Matisse artwork, it is inconceivable that this transaction could be viewed as "arms length."

In paragraphs 54 and 32 of the Complaint, Plaintiffs allege that Benucci had knowledge of Salander's impaired financial condition. Once again, the "Settlement Agreement" itself indicates that Benucci knew when they entered into the bogus conveyance that Salander had defaulted on a huge debt of $4,901,100. And based on a letter from Benucci's New York

attorneys (at Proskauer Rose) (a copy of which is attached), Plaintiffs alleged that Salander had written checks to Benucci which had been dishonored by Salander's bank. Thus Plaintiffs have cited an admitted example of how Benucci knew that Salander was insolvent and thus knew that he might be prone to falsely claim ownership of Plaintiffs' artworks.

The heart of Plaintiffs' Complaint, factually speaking, is the allegation that Benucci knew that the artworks which the Plaintiffs are seeking in this action did not belong to Salander. In paragraphs 19, 20, 21, 22, 23, 24, 26, 27, 30, 31, and 52 of the Complaint, Plaintiffs allege that at the time these 28 artworks came into Benucci's possession, it was known by Benucci that the artworks did not belong to Salander. Plaintiffs cite two examples of contact directly between two of the Plaintiffs and the principals of Benucci, which indicate that when the artworks of these two artists were sent to Rome, the artworks ostensibly belonged to these Plaintiffs. Furthermore, Plaintiffs have alleged that this information was consistent with what Benucci would have expected because it is normal that contemporary works of art are entrusted by consignment and title remains with the artist/owner until a sale occurs and the artist/owner is paid. Indeed Benucci has even come into the Bankruptcy Court in this District and has submitted a declaration (dated December 20, 2007 and signed under penalty of perjury) making the following assertions:

> It is known that galleries in general sell artworks on consignment.
> Here, it is generally known, and has been known at all times relevant, by Salander's creditors that Salander was substantially engaged in selling the goods of others.
> It is common knowledge and general public knowledge of customers and creditors alike, that Salander-O'Reilly Galleries during the past ten years has substantially engaged in selling the goods of others which he holds on consignment and sells as agent of consignor.

> It is public knowledge that art galleries are engaged in selling artworks on consignment and public knowledge that Salander in particular was primarily engaged in selling art on consignment.

Since Benucci has raised the Bankruptcy proceedings in defense of its motion, the Court should be entitled to take notice of Mr. Gargari's Declaration.  A copy of this Declaration is attached to this Memorandum.  In addition, Plaintiffs have alleged that Benucci made no effort either directly or through their New York attorneys to check on whether any of the artworks that Plaintiffs owned could be conveyed by Salander in the "Settlement Agreement."  Since at least two of the Plaintiffs where personally known to the Benucci (as described in paragraph 24 of the Complaint), it would have been extremely simple and quick for Benucci to inquire whether these works were owned by Salander.  The fact that no such effort was made (by either Benucci or the attorneys at Proskauer Rose) further supports the inference of fraudulent intent by Benucci.[8]

In paragraph 55 of the Complaint Plaintiffs allege that this "Settlement Agreement" was entered into between Salander and Benucci in haste and in secrecy.  Once again, the alleged fact that no efforts were made to contact any Plaintiff (notwithstanding the ease of doing so), suggests the secrecy in which this transaction was no doubt conducted.  The haste of the transaction once again appears on the face of the "Settlement Agreement".  The document itself indicates that a defaulted obligation to pay $4,901,100 resulted in an ex-party order of attachment secured in May 2007 from a court in Rome.  That attachment order applied to an artwork by Henri Matisse, *Still Life with Tahitian Hat*, which obviously Salander was desperate to obtain.  In less than one month's time, a conveyance involving 97 works of art was quickly

---

[8] Virtually the only possible explanation for the complete lack of due diligence in the transaction is that the parties either knew or did not care that Salander lacked title.

drawn up and one or both of the principals of Benucci flew to New York to sign this Settlement Agreement.

In paragraphs 29, 54, and 57 of the Complaint, Plaintiffs allege that the consideration for this conveyance was inadequate. Again, the "Settlement Agreement" itself indicates that Benucci made no payment to Salander for its "acquisition" of 97 works of art. The absence of any valuation for the works (which Plaintiffs allege and which is on the face of the "Settlement Agreement") strongly indicates that there was no meaningful determination of whether there was any equality between the value of the artworks conveyed and the debt cited in the Agreement. Indeed the only benefit truly conferred to Salander was possession of the Matisse painting which Salander already owned. And while Benucci will no doubt posture that it was cancelling a debt of $4,901,100, that consideration was both at the time it was given and certainly now meaningless since Salander was insolvent and now bankrupt. Basically, Benucci gave up a worthless, unsecured claim in exchange for title to 97 works of art including 28 owned by the Plaintiffs.[9]

In paragraph 56 of the Complaint, Plaintiffs allege that the conveyance included a kickback or future benefit for Salander. Once again, the presence of this particular future benefit from the conveyance is present within the Settlement Agreement. Paragraph 6 of that document states that 14 of the artworks conveyed by Salander to Benucci would not be physically sent to Benucci but rather would be held by Salander on consignment from Benucci. Salander was given six months to sell these works and to the extent that the sales proceeds exceeded the sum of $2,049,700 Salander could keep any and all of the excess sums obtained. In the haste to slap

---

[9] At the time the Complaint was drafted counsel for the Plaintiffs considered but did not include a violation of NYDCL §275. Upon the reflection and review engendered by this motion, an amendment to the Complaint adding a claim under this section would appear to be worthwhile.

this document together, no attention was paid to how this paragraph would work if some but if not all of the 14 works were sold. But the potential future benefit is one of the badges of fraud cited by the Courts and averred by the Plaintiffs.

Finally, in paragraph 34 of the Complaint, Plaintiffs allege that Benucci's conduct following the date of the Settlement Agreement further supports a finding of fraudulent intent. Plaintiffs allege that some the artworks were received by Benucci directly from the Plaintiffs in 2005 and that over a two year period there was no sales activity. Plaintiffs learned and allege that almost immediately after executing this piece of paper, Benucci began furious efforts to sell these works at drastically reduced prices. Since Benucci did not really pay for these works, there would be no economic constraint against selling for whatever a buyer might be willing to pay. Had Benucci paid full value for the works, this fire-sale activity would not have been in its economic interest.

Thus, in addition to pleading the challenged transaction with the utmost particularity (by attaching the conveyance document), Plaintiffs have averred the following badges of fraud: 1) a transaction not in the ordinary court of business; 2) knowledge by the transferee of the transferor's seriously impaired financial condition; 3) knowledge by the transferee that the property conveyed did not belong to the transferor; 4) failure by the transferee to take simple and readily accessible steps to ascertain whether the transferor had the right to convey the property; 5) a transaction conducted in haste and secrecy; 6) inadequacy of the consideration given by the transferee; 7) retention of a benefit by the transferor; and 8) post-transaction conduct by the transferee inconsistent with a bona fide conveyance for value.

## Conclusion

The Complaint provides adequate notice of the transaction claimed to be fraudulent and a substantial number of factual reasons why Plaintiffs believe it to be fraudulent. There cannot be any doubt that Benucci (and the Court) are on notice of the precise conduct at issue under this claim. Indeed, Benucci's motion is so groundless and unsupported that it could be reasonably viewed as yet another step in Benucci's effort to hinder and delay the Plaintiffs from reclaiming their property. Plaintiffs respectfully request that Benucci's motion be denied and that a scheduling conference be ordered by the Court as soon as possible upon the Court's disposition of this motion.

Dated: New York, New York
      March 21, 2008

By: _____
John B. Koegel (JK 4762)

THE KOEGEL GROUP LLP
*Attorneys for Plaintiffs*
161 Avenue of the Americas
New York, New York 10013
Tel: (212) 255-7744
Fax: (212) 337-1103

**<u>Addendum to Plaintiffs' Memorandum of Law</u>**

**<u>"Settlement Agreement" dated June 2, 2007 between
Benucci s.r.l. and Salander-O'Reilly Galleries</u>**

# Apostille

(Convention de La Haye du 5 Octobre 1961)

1. **Country:**   **United States of America**

   This public document

2. has been signed by **Norman Goodman**

3. acting in the capacity of **County Clerk**

4. bears the seal/stamp of the county of **New York**

# Certified

5. At New York, New York     6. the 07th day of June 2007

7. by Special Deputy Secretary of State, State of New York

8. No. NYC-10263634B

9. Seal/Stamp     10. Signature

*James Bizzarri* (signature)

James Bizzarri
Special Deputy Secretary of State

04135595.R5L ( REV: 2/8/96)

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into as of June 2, 2007 by and between Benucci, S.R.L. ("Benucci") and Salander O'Reilly Galleries, LLC ("Salander") (collectively, the "Parties").

WHEREAS, Benucci sold to Salander several works of art pursuant to a series of agreements (the "Sales Agreements") for a total purchase price of US$ 9,023,000.00;

WHEREAS, Salander still owes Benucci US$ 4,901,100 under the terms of the Sales Agreements;

WHEREAS, Salander has consigned certain works of art belonging to Salander, some of which are listed in Attachment B hereto, to Benucci;

WHEREAS, Benucci claims that Salander has defaulted on its payment obligations and Benucci has therefore obtained an ex parte order of attachment against Salander's property and assets located in Italy from the Tribunal of Rome (the "Attachment"); and

WHEREAS, Pursuant to the Attachment, certain works of art belonging to Salander, including those listed in Attachments A and B hereto, have been attached;

NOW THEREFORE, subject to the conditions set forth herein, the parties hereto agree as follows:

1.    Salander hereby transfers to Benucci all ownership interest in, with good and clear title, the works of art listed in Attachment A hereto. Salander represents and warrants that it possesses good and clear title to the works of art and that it has not heretofore assigned,

transferred, or subrogated, or purported to assign, transfer, or subrogate any of its rights in the works of art listed in Attachment A hereto.

2.      Salander hereby transfers to Benucci all ownership interest in, with good and clear title, the works of art listed in Attachment B hereto. Salander represents and warrants that it possesses good and clear title to the works of art and that it has not heretofore assigned, transferred, or subrogated, or purported to assign, transfer, or subrogate any of its rights in the works of art listed in attachment B hereto.

3.      Salander hereby transfers to Benucci all ownership interest in, with good and clear title, the works of art listed in Attachment C hereto. Salander represents and warrants that it possesses good and clear title to the works of art and that it has not heretofore assigned, transferred, or subrogated, or purported to assign, transfer, or subrogate any of its rights in the works of art listed in attachment C hereto. Salander shall transfer such works of art to Benucci by June 15, 2007.

4.      Salander hereby transfers to Benucci all ownership interest in, with good and clear title, the works of art listed on Attachment D hereto. Salander represents and warrants that it possesses good and clear title to the works of art and that it has not heretofore assigned, transferred, or subrogated, or purported to assign, transfer, or subrogate any of its rights in the works of art listed on attachment D hereto.

5.      Benucci shall return to Salander the work of art by Henri Matisse titled *Still Life with Tahitian Hat,* previously consigned to Benucci by Salander.

2

6.     Benucci hereby consigns the works of art listed on Attachment D hereto to Salander for sale on behalf of Benucci until December 1, 2007, after which date Salander shall return the works of art to Benucci. Salander shall not sell any of the works of art for less than the reserve price listed on Attachment D hereto. The first US $2,049,700.00 (Two million, forty nine thousand, seven hundred dollars) of the proceeds of the sale of the consigned works of art listed on Attachment D hereto shall be transferred to Benucci. Any proceeds in excess of $2,049,700.00 shall be retained by Salander.

7.     Salander hereby consigns the work of art listed on Attachment E hereto to Benucci for sale on behalf of Salander until December 1, 2007, after which date Benucci shall return the work of art to Salander. Salander shall transfer such work of art to Benucci by June 15, 2007. Benucci shall not sell the work of art for less than the reserve price listed on Attachment E hereto. Any sale below the reserve price must be approved and agreed to by Benucci. Any proceeds in excess of the reserve price shall be retained by Benucci.

8.     In the event that Salander sells any or all of the works of art consigned by Benucci to Salander, listed on Attachment D hereto, but fails to pay the proceeds to Benucci as required by Paragraph 6 above, good and clear title to the work of art listed on Attachment E hereto shall immediately and automatically transfer to Benucci as liquidated damages.

9.     Salander shall be responsible for and shall pay any and all transportation costs, including, without limitation, insurance costs, related to the transfer and movement of any and all of the works of art referred to above, including Paragraphs 1, 3, 5, 6, and 7.

3

10. Upon receipt of the works of art listed on Attachments A, C and E hereto, Benucci shall thereafter promptly take all steps necessary to lift the Attachment.

11. Simultaneous with execution of this agreement, the Parties shall execute mutual releases (the "Releases") in the same form as Attachments F and G hereto. The Releases shall be held in escrow by Proskauer Rose LLP until, and shall take effect upon receipt by Benucci of the works of art listed on Attachments A, C and E hereto.

12. This Agreement, including Attachments and the Releases, contains the entire agreement and understanding concerning the Sales Agreements and supersedes and replaces any prior negotiations or agreements between the Parties to this Agreement, or any of them, whether written or oral, except as expressly provided herein.

13. None of the Parties to this Agreement shall be deemed to be the author of this Agreement or any specific term, provisions or condition hereof. Any ambiguities shall be resolved, and the terms, provisions, and conditions of this Agreement shall be construed and interpreted, without regard to which party may have suggested, drafted, revised or otherwise authored this Agreement or any of its specific terms, provisions or conditions, and this Agreement shall be construed and interpreted as if drafted jointly by all of the Parties hereto.

14. This Agreement may not be changed, altered or modified except in writing signed by all of the Parties to this Agreement.

15. Each individual executing this Agreement on behalf of the Parties to this Agreement hereby represents and warrants that he or she has been duly authorized to execute this Agreement.

4

*TO BE USED IN*

*ITALY*

16.    The Parties acknowledge that they have carefully read this Agreement, know and understand the contents and effect thereof, and sign the same by their own free will and that they have had the opportunity to be advised by counsel regarding the terms, conditions, and provisions of this Agreement, and either have been so advised or have chosen not to seek such advice.

June ____, 2007                                    Benucci, S.R.L.

                                                   By: _____

                                                   Title: _____

June ____, 2007                                    Salander O'Reilly Galleries, LLC

                                                   By: _____

                                                   Title: _____

Sworn to before me this 2nd day of June 2007 in New York, New York, USA.

Conor Malinowski
Notary Public

CONOR MALINOWSKI
Notary Public, State of New York
No. 02MA6120827
Qualified in New York County
Commission Expires Dec. 27, 2008

5

16.   The Parties acknowledge that they have carefully read this Agreement, know and understand the contents and effect thereof, and sign the same by their own free will and that they have had the opportunity to be advised by counsel regarding the terms, conditions, and provisions of this Agreement, and either have been so advised or have chosen not to seek such advice.

June _____, 2007

Benucci, S.R.L.

By: _____

Title: _____

June _____, 2007

Salander O'Reilly Galleries, LLC

By: _____

Title: _____

569916          Form 1

State of New York,  } ss.:
County of New York,

I, NORMAN GOODMAN, County Clerk and Clerk of the Supreme Court of the State of New York, in and for the County of New York, a Court of Record, having by law a seal, DO HEREBY CERTIFY pursuant to the Executive Law of the State of New York, that _____ whose name is subscribed to the annexed affidavit, deposition, certificate of acknowledgment or proof, was at the time of taking the same a NOTARY PUBLIC in and for the State of New York duly commissioned, sworn and qualified to act as such; that pursuant to law, a commission or a certificate of his official character, with his autograph signature has been filed in my office; that at the time of taking such proof, acknowledgment or oath, he was duly authorized to take the same; that I am well acquainted with the handwriting of such NOTARY PUBLIC or have compared the signature on the annexed instrument with his autograph signature deposited in my office, and I believe that such signature is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand affixed my official seal this

JUN 0 5 2007

FEE PAID $3.00

_____
County Clerk and Clerk of the Supreme Court, New York County

NO. 02MA6120027
Qualified in New York County
Commission Expires Dec. 27, 2008

5

# ATTACHMENT A

| REG | ARTIST | TITLE |
|---|---|---|
| 22606 | Italian | Portrait of a Noblewoman |
| 22667 | Correggio (after) | Virgin and Child with Saints |
| 22772 | Tino di Camaino (circle) | St. Anthony Abbott |
| 22800 | Santi Buglioni | Archangel Gabriel |
| 22858 | Central Italian | Madonna and Child |
| 22963 | Mantegazza (attr.) | Nativity |
| 22966 | Tuscan | Pair of Angels |
| 23270 | Bolognese | Deacon Saint |
| 23298 | Christoforo Solario | Captive with Bound Wrists |
| 23360 | Jacopo del Sellaio | St. Jerome & the Magdalene |
| 23431 | Italian | Christ Supported by Two Angels |
| 24432 | Benedetto da Maiano | Madonna and Child |
| 25229 | Calacava | Portrait of a Gentleman |
| 25612 | Francesco Fanelli | Rearing Horse |
| 25957 | | The Judgement of Solomon |
| 26050 | French | Bust of a Young Girl |
| 26292 | German (Rhineland) | Seated Madonna and Child |
| 26378 | Ribera | Ecce Homo |
| 26425 | Pauwels Franck, Called Paolo Fiammingo | Fall of Mankind and Banishment from Paradise |
| 26526 | Niccolo d'Abbate | Magdalene |
| 26538 | Paris Bordone | Christ and the Woman of Samaria |
| 26544 | Cavaliere D'Arpino | Perseus Liberating Andromeda |
| 26796 | Jacques Blanchard | Danae |
| 26800 | Danielle Crespi | Baptism of Christ |
| 26961 | Francesco Bissolo | Madonna and Child |
| 27288 | Giovanni Contarini | Saint Catherine |
| 22682 | Italian | Hercules |
| 22683 | Italian | Omphale |

# ATTACHMENT B

| REG | ARTIST | TITLE |
|---|---|---|
| 23276 | Anonymous | Florence |
| 21273 | George McNeil | Astor Place |
| 21280 | George McNeil | Black Line Cloud |
| 21286 | George McNeil | Bosra |
| 20675 | Giorgio Cavallon | Untitled |
| 23693 | Giorgio Cavallon | Between the Blues |
| 23754 | Giorgio Cavallon | Untitled |
| 24052 | Kikuo Saito | Roman Gray |
| 24053 | Kikuo Saito | Blue Window |
| 25181 | Kikuo Saito | Sugar Moon |
| 25182 | Kikuo Saito | Copper Tree |
| 25183 | Kikuo Saito | Black Alphabet |
| 24054 | Michael Mulhern | Overcoat 76 |
| 24055 | Michael Mulhern | Overcoat 133 |
| 5466 | Michael Steiner | Fire and Iron |
| 21753 | Michael Steiner | Bones and Dust |
| 21830 | Michael Steiner | 9-Aug-03 |
| 24056 | Michael Steiner | The Fan II |
| 13297 | Pablo Picasso | Untitled (Woman Sitting) |
| 16960 | Paul Resika | Vessels # 23 |
| 17616 | Paul Resika | Black, Green, White and Blue |
| 17725 | Paul Resika | Flat Boats |
| 17736 | Paul Resika | Sun Sails |
| 21312 | Paul Resika | Blue Creation |
| 22191 | Paul Resika | Black Vessel and Moon |
| 23512 | Paul Resika | Light of Water |
| 24036 | Paul Resika | Green Night |
| 24037 | Paul Resika | Black and Grey Harlequin |
| 24038 | Paul Resika | For Remo |
| 24039 | Paul Resika | Branch, Moon and Sail |
| 24040 | Paul Resika | Moon Triangles |
| 24041 | Paul Resika | Pine Branch, Moon, Sail |
| 24042 | Paul Resika | Black Branch, Sail |
| 24043 | Paul Resika | Branch, Moon |
| 25178 | Paul Resika | Blue Creation II |
| 25179 | Paul Resika | Yellow Creation |
| 25180 | Paul Resika | Blue Carp |
| 27085 | Philip Guston | Untitled |
| 7583 | Robert de Niro, Sr. | Girl in Red |
| 8786 | Robert De Niro, Sr. | Seated  Nude |
| 8788 | Robert De Niro, Sr. | Two Figures |
| 8797 | Robert De Niro, Sr. | Mother and Child |
| 8800 | Robert De Niro, Sr. | Seated Nude |
| 8802 | Robert De Niro, Sr. | Guitar Case |
| 8803 | Robert De Niro, Sr. | Interior with Guitar Case |
|  |  | cont. |

## ATTACHMENT B

| 8862 | Robert De Niro, Sr. | Still Life |
|---|---|---|
| 8978 | Robert De Niro, Sr. | Seated Figure with White Shirt and Still Life |
| 9925 | Robert De Niro, Sr. | Three Figures |
| 10524 | Robert De Niro, Sr. | Nudes on a Yellow Background |
| 18212 | Robert de Niro, Sr. | Nude Leaning on Back of Chair |
| 24059 | Steven Harvey | Untitled (From Contact) |
| 24060 | Steven Harvey | Blue Walking Figure |
| 26522 | Suzanne Valadon | Bouquet of Flowers |
|  |  |  |

## ATTACHMENT C

| REG | ARTIST | TITLE |
|---|---|---|
| | | |
| 23489 | Giovanni Caccini | Bust of Christ |
| 25852 | Giovanni Rustici | Relief of Madonna and Child |

## ATTACHMENT D

| REG | ARTIST | TITLE | COST / RESERVE |
|---|---|---|---|
| | | | |
| 23981 | French | Figures by the Sea | $121,500 |
| 23394 | Tuscan | Madonna and Child | $121,500 |
| 24857 | Roccatagliata | Andirons | $38,000 |
| 24020 | Italian | Frame | $16,200 |
| | Italian | Cassone | $27,000 |
| 24233 | Veronese | Madonna and Child | $65,000 |
| 23909 | Carracci | Dead Christ | $351,000 |
| 24021 | Camillani | Orpheus and Eurydice | $216,000 |
| 24029 | Bernini | Marble Bench 1/3 | - |
| 24030 | Bernini | Marble Bench 2/3 | $310,500 |
| 24243 | Bernini | Marble Table 3/3 | - |
| 23964 | Raphael | Madonna and Child | $378,000 |
| 24027 | Bernini | Console Table Tree | $378,000 |
| 24025 | Italian | Fountain | $27,000 |
| | | | |
| | | TOTAL | $2,049,700 |

## ATTACHMENT E

| REG | ARTIST | TITLE | COST / RESERVE |
|-----|--------|-------|----------------|
| | | | |
| 23192 | Luca Signorelli | Presentation of Christ at the Temple | $2,500,000 |

**ATTACHMENT F**

**GENERAL RELEASE**

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN.
KNOW THAT, Salander O'Reilly Galleries, LLC, a limited liability company with its principal place of business located at 22 East 71st Street, New York, New York, as RELEASOR, in consideration of US$1 (One Dollar), receipt of which is hereby acknowledged, releases and discharges Benucci S.R.L., a business organized and existing under the laws of the of the Italian Republic with its principal place of business located at 153 Via del Babuino n. 150-153, Rome, Italy, the RELEASEE, RELEASEE's heirs, executors, administrators, successors and assignees from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this Release.

This RELEASE may not be changed orally.

In Witness Whereof, the RELEASOR has caused this RELEASE to be executed by its duly authorized officers on June _____, 2007

By:_____

Sworn to before me this ____ day of June, 2007

_____

Notary Public

**ATTACHMENT G**

**GENERAL RELEASE**

TO ALL TO WHOM THESE PRESENTS SHALL COME OR MAY CONCERN.
KNOW THAT, Benucci S.R.L., a business organized and existing under the laws of the of the
Italian Republic with its principal place of business located at 153 Via del Babuino n. 150-153,
Rome, Italy, as RELEASOR, in consideration of US$1 (One Dollar), receipt of which is hereby
acknowledged, releases and discharges Salander O'Reilly Galleries, LLC, a limited liability
company with its principal place of business located at 22 East 71st Street, New York, New
York, the RELEASEE, RELEASEE's heirs, executors, administrators, successors and assignees
from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings,
bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,
trespasses, damages, judgments, extents, executions, claims, and demands whatsoever, in law,
admiralty or equity, which against the RELEASEE, the RELEASOR, RELEASOR'S successors
and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of
any matter, cause or thing whatsoever from the beginning of the world to the day of the date of
this RELEASE.

The words "RELEASOR" and "RELEASEE" include all releasors and all
releasees under this Release.

This RELEASE may not be changed orally.

In Witness Whereof, the RELEASOR has caused this RELEASE to be executed
by its duly authorized officers on June _____, 2007

By:_____

Sworn to before me this ____ day of June, 2007

_____
Notary Public

**Addendum to Plaintiffs' Memorandum of Law**

**Letter from Attorney for Benucci to Justice Richard B. Lowe III
Dated October 18, 2007**

BOCA RATON
BOSTON
LONDON
LOS ANGELES
NEW ORLEANS
NEWARK
PARIS
SÃO PAULO
WASHINGTON

1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212.969.2900

## PROSKAUER ROSE LLP

John D. Roesser
Attorney at Law

Direct Dial 212.969.3388
jroesser@proskauer.com

October 18, 2007

**By Hand**

Hon. Richard B. Lowe III
New York County Supreme Court
60 Centre Street
New York, New York 10007

Re:   Lennox v. Salander-O'Reilly Galleries, LLC, et al., Index No. 602917/07

Dear Justice Lowe:

We represent Benucci S.r.l. ("Benucci"), along with our co-counsel Studio Avvocati Zappalà in Rome, Italy. Benucci operates art galleries in Rome and is in a dispute with Salander-O'Reilly Galleries, LLC and Lawrence Salander (collectively "Salander"). We have been informed that the Court has scheduled a conference in the above-captioned matter for tomorrow, October 19, 2007, at 9:30 a.m. We wish to appear at the conference on behalf of Benucci and intend to seek to intervene in this action.

Between January and August 2005, Benucci entered into agreements with Salander pursuant to which Benucci sold to Salander several works of art. The aggregate purchase price for the works of art was $9,023,000. Benucci fully performed its obligations under the agreements and delivered the works of art to Salander, but Salander failed to pay the full purchase price. Salander provided Benucci a series of post-dated checks for the total purchase price, but only checks totaling $2,373,000 were honored, with First Republic Bank refusing to honor additional payment checks. Thereafter, Salander did return to Benucci in Italy certain works of art in exchange for a credit of $1,748,900, but that still left an outstanding balance of $4,901,100.

In May 2007, Benucci obtained an order of attachment from the Tribunal of Rome against Salander's property and assets located in Italy. The value of the works attached, however, was not sufficient to cover the outstanding balance.

On June 2, 2007, Benucci and Salander executed a settlement agreement concerning the dispute between them and Salander's obligations to Benucci. As part thereof, Salander transferred to Benucci title to the attached works of art in Italy, title to the works of art Benucci sold to

**PROSKAUER ROSE LLP**

Hon. Richard B. Lowe III
October 18, 2007
Page 2

Salander and still in Salander's possession, and title to certain additional works of art. Benucci has filed UCC financing statements on various of these works. However, Salander is in breach by, among other things, failing to transfer possession of many of those works. The parties engaged in further resolution efforts, but Salander has not honored them either.

The foregoing is but a brief summary of the dispute between Benucci and Salander and does not detail all of Benucci's causes of action and damages concerning this situation. We respectfully believe, however, that it does demonstrate the related nature of the Benucci dispute to the above-referenced action. As such, Benucci respectfully requests the opportunity to attend the upcoming conference and to intervene in this action.

Respectfully submitted,

John D. Roesser

cc:    Jennifer Tafet Klausner
       Davis & Gilbert, LLP
       Counsel to Lennox
       (with a request to distribute this letter to
       all known interested counsel and parties)

       Peter J.W. Sherwin
       Proskauer Rose LLP

       Andrea Zappalà
       Studio Avvocati Zappalà

**<u>Addendum to Plaintiffs' Memorandum of Law</u>**

**<u>Declaration of Dr. Tommaso Gargari</u>**
**<u>Dated December 20, 2007</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SALANDER-O'REILLY GALLERIES LLC, | ) | |
| | ) | Case No.: 07-30005-(CGM) |
| Debtor. | ) | |
| | ) | |

## DECLARATION OF DR. TOMMASO GARGARI

### IN SUPPORT OF BENUCCI S.R.L.'S MOTION PURSUANT TO SECTION 105(a) AND 541 OF THE BANKRUPTCY CODE TO COMPEL RETURN OF BENUCCI'S ARTWORKS, WHICH ARE NON ESTATE ASSETS IMPROPERLY HELD IN THE ESTATE

I, DR. TOMMASO GARGARI, hereby declare under penalty of perjury that the following is true:

1.      I am shareholder of Benucci, S.R.L. ('Benucci"). I submit this declaration in support of Benucci's motion to compel Debtor Salander-O'reilly Galleries LLC ("Debtor' or "Salander") to return Benucci's Artworks.

2.      Benucci is a corporation organized under the laws of Italy whose principal place of business is located at Rome, Italy.

3.      Benucci entered into a written settlement agreement with Debtor Salander-O'Reilly Galleries LLC ("Salander" or the "Debtor") pre-petition on June 2, 2007. A true Copy of the Settlement Agreement is attached hereto as Exhibit 1 (the "Settlement Agreement").

4.      Benucci is the owner of artworks listed on Exhibit C to the Settlement Agreement, whose ownership and title were transferred to Benucci pre-petition pursuant to the Settlement Agreement.

5.      Benucci is the owner of paintings listed on Exhibit D to the Settlement Agreement, which were delivered to Debtor pre-petition pursuant to the Settlement Agreement under which the Debtor was to act as Benucci's bailee, and, pursuant to specific instructions, to

attempt to "sell [them] on behalf of Benucci until December 1, 2007" at set minimum prices. *See* Settlement Agreement.

6.      Of the artworks contemplated by Exhibits C and D to the Settlement Agreement, the Debtor has delivered to Benucci only one item contemplated by Exhibit C and four items of those contemplated by Exhibit D, as described on the schedule attached as Exhibit 2 hereto. One artwork contemplated by Exhibit C ("Exhibit C Artwork") and ten artworks contemplated by Exhibit D ("Exhibit D Artworks") have not yet been delivered by the Debtor to Benucci, as described by the schedule attached as Exhibit 3 (collectively the Exhibit C Artworks and the Exhibit D Artworks the "Benucci Artworks").

7.      Upon information and belief, the Benucci Artworks are still in the Debtor's possession, custody and/or control and remain at the Debtor's gallery.

8.      Benucci has requested that the Debtor return the Benucci Artworks to it and the Settlement Agreement specifically provides that the Exhibit C Artwork shall be delivered, by June 15, 2007, and the Exhibit D Artworks shall be returned after December 1, 2007, at Debtor's expense.

9.      The Settlement Agreement states in the first Paragraph 3 as follows:

Salander hereby transfers to Benucci all ownership interest in, with good and clear title, the works of art listed in Attachment C hereto. ... Salander shall transfer such works of art to Benucci by June 15, 2007.

10.     The Settlement Agreement states in Paragraph 6 as follows:

Benucci hereby consigns the works of art listed on Attachment D hereto to Salander for sale on behalf of Benucci until December 1, 2007, after which date Salander shall return the works of art to Benucci. Salander shall not sell any of the works of art for less that the reserve price listed on attachment D hereto. The first US $2,049,700 (Two million, forty nine thousand, seven hundred dollars) of the proceeds of the sale of the consigned works of art listed on Attachment D hereto shall be transferred to Benucci. Any proceeds in excess of $2,049,700.00 shall be retained by Salander.

2

11. Benucci filed a UCC Financing Statement providing notice of his security interest in the Exhibit D Artworks on June 26, 2007 at 12:15 p.m. A true copy of the UCC filing is attached as Exhibit 4.

12. The Debtor has not delivered nor returned the Benucci Artworks nor has it represented that any of the Exhibit D Artworks has been sold by the Debtor.

13. Accordingly, Benucci is entitled under the Settlement Agreement to an Order requiring the Debtor to promptly deliver and return the Benucci Artworks to Benucci.

14. Salander did not and does not have ownership rights in the Exhibit C Artwork which at all time has been and is owned by Benucci.

15. Upon information and belief, I believe that Benucci Artwork is in the estate.

16. Pursuant to Paragraph 6 of the Settlement Agreement, Benucci is entitled to the Exhibit D Artworks because to the best of my knowledge, they have not been sold by the Debtor.

17. I have no knowledge that the Exhibit D Artworks have been sold and upon information and belief believe that they are in the estate.

18. The Debtor must live up to its obligation to return the Exhibit D Artworks under the Settlement Agreement.

19. Benucci delivered the Exhibit D Artworks to Salander as an agent to sell the artworks on his behalf.

20. It is known that galleries in general sell artworks on consignment.

21. Here, it is generally known, and has been known at all times relevant, by Salander's creditors that Salander was substantially engaged in selling the goods of others.

22.   It is common knowledge and general public knowledge of customers and creditors alike, that Salander-O'Reilly Galleries during the past ten years has substantially engaged in selling the goods of others which he holds on consignment and sells as agent of the consignor.

23.   It is public knowledge that art galleries are engaged in selling artworks on consignment and public knowledge that Salandar in particular was primarily engaged in selling art on consignment.

Dated: 20.12.2007

DR. TOMMASO GARGARI

4